## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

John Andrew Goodridge
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rashaun Curry,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

December 9, 2015

Court of Appeals Case No.
19A04-1505-CR-407

Appeal from the Dubois Superior Court

The Honorable Mark R. McConnell, Judge

Trial Court Cause No.
19D01-1002-FA-157

**Brown, Judge.**

[1] Rashaun Curry appeals his sentence for dealing in a schedule III controlled substance as a class A felony, dealing in a schedule II controlled substance as a class B felony, possession of marijuana as a class A misdemeanor, and driving while suspended as a class A misdemeanor. Curry raises one issue which we revise and restate as whether his sentence is inappropriate in light of the nature of the offenses and the character of the offender. We affirm.

## Facts and Procedural History

[2] On or about February 14, 2010, Kelly Reller[1] picked up his grandson from the home of Curry, who was the child's father. Reller was "under the assumption that [] Curry possibly still was dealing in marijuana and pharmaceutical pills" and asked Curry if he had any or knew anybody that had any pain pills. Transcript at 152. Curry replied that he planned to travel to Indianapolis to pick up pills and bring back five hundred of them. One or two days later, Reller contacted the Huntingburg Police Department and reported that his grandson's father was doing illegal activities with drugs and that he was willing to wear a wire to do a buy.

[3] After exchanging phone calls and text messages throughout the week, Curry called Reller on February 21, 2010, and stated that he was traveling from Indianapolis and that he planned to stop in Bloomington to drop off or sell 350 pills. Reller called the police and went to the police station, where the police

---

[1] This spelling is used in the trial transcript.

searched Reller and his vehicle, gave him an audio recording device, and provided him with $120 of buy money after recording the bills' serial numbers. Reller drove to Curry's apartment, and other officers positioned themselves in the area around the apartment.

[4] When Reller arrived, Curry exited the apartment and entered Reller's vehicle, sitting in the passenger seat. Curry asked Reller how many he wanted, and Reller said he had $120. Reller asked if there was any way that he could pick up some more later if he could reach a buddy of his, and Curry said that he planned to travel to Evansville to get rid of the rest of the pills. He counted pills out of a bill bottle, Reller gave him the $120 of buy money, and Curry gave Reller twenty-two pills, which were later determined to contain hydrocodone, a controlled substance. Curry exited Reller's vehicle, and Reller drove to the police station.

[5] Curry later left the apartment complex, and officers followed him. After observing a traffic violation, an officer initiated a traffic stop, ran Curry's information and discovered his license was suspended, and arrested him for driving while suspended. A pat down revealed a pill in Curry's pocket, and after obtaining a search warrant, police found a bag containing marijuana and two bottles with a number of pills containing controlled substances in the glove box of the vehicle. Police recovered the buy money from Curry's girlfriend, who reported that Curry had given her the money.

[6] The State charged Curry in an amended charging information on October 24, 2012, with dealing in a schedule III controlled substance as a class A felony; possession of a schedule III controlled substance as a class C felony; three counts of dealing in a schedule III controlled substance as class B felonies; dealing in a schedule II controlled substance as a class B felony; three counts of possession of a schedule III controlled substance as class D felonies; possession of a schedule II controlled substance as a class D felony; possession of marijuana as a class A misdemeanor, with the intent to seek an enhancement to a class D felony due to a previous conviction; and driving while suspended as a class A misdemeanor. Following a three-day trial, a jury convicted Curry on all counts as charged. At sentencing, the trial court merged his conviction for possession of a schedule III controlled substance as a class C felony, his three convictions for dealing in a schedule III controlled substance as class B felonies, and his three convictions for possession of a schedule III controlled substance as class D felonies into his conviction for dealing in a schedule III controlled substance as a class A felony. Curry was sentenced to twenty-four years for his conviction of dealing in a schedule III controlled substance as a class A felony, six years for dealing in a schedule II controlled substance as a class B felony, one year for possession of marijuana as a class A misdemeanor, and one year for driving while suspended as a class A misdemeanor, with the sentences to be served concurrently. The court also ordered that, after he has completed sixteen years of incarceration, he may petition the court for a modification of placement to community corrections.

## Discussion

The issue is whether Curry's sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

Curry asserts that this was only his second felony offense and that his criminal history revolved around his addiction to marijuana. He points to the presentence investigation report ("PSI") which stated his overall risk assessment score placed him in the category of low risk to reoffend. He contends that substance abuse appears to be the most compelling cause for his criminal conduct and that he accepted responsibility for his conduct. Curry further argues that the informant was the maternal grandfather of his child who wanted to set him up, that this is not the typical dealing case, investigation, or arrest, and that the informant wanted him away from his daughter and grandchild. He also argues that his sentence works an extreme hardship on his dependents and that he has a consistent work history. He requests that this court remand for resentencing and states that a reasonable sentence would be the minimum aggregate sentence of twenty years with the majority of that executed in community corrections as recommended by the probation officer in the PSI.

[9] The State points out that Curry received less than the advisory sentence of thirty years on his class A felony conviction, he was in the process of peddling more than one hundred pills containing controlled substances, and that while Reller may have initiated the investigation, Curry was planning on dealing drugs to many more people in a large quantity. It also notes that Curry has a history of non-compliance with probation and other programs, and that he previously participated in two different substance abuse programs but persists in his use despite being given treatment options.

[10] Our review of the nature of the offenses reveals that Curry traveled to Indianapolis to obtain numerous pills containing controlled substances, that he sold twenty-two of the pills to Reller, and that, when he was detained by officers, he had numerous other pills containing controlled substances and marijuana in his vehicle's glove box and was driving while suspended. Curry told Reller on the phone that he planned to stop in Bloomington to drop off or sell 350 pills and later told him that he planned to travel to Evansville to get rid of the rest of the pills.

[11] Our review of the character of the offender reveals that, according to the PSI, Curry pled guilty in 2004 to possession of marijuana as a class A misdemeanor, with judgment withheld contingent upon successful completion of probation, and that the cause was dismissed in 2005. The PSI further shows that Curry pled guilty in 2006 to possession of marijuana as a class A misdemeanor and was placed on probation, that he later admitted to violating his probation and was placed a on day reporting program, and that he was later removed from

that program and ordered to serve one year in the Department of Correction ("DOC"). He also pled guilty in 2008 to possession of marijuana as a class D felony, with judgment withheld pending successful completion of the drug court's day reporting program, and he was removed from that reporting program in 2009 and sentenced to eighteen months in the DOC with six months executed and the balance served on probation.

[12] The PSI also states that Curry's version of the present offenses is that Reller was upset with him and conspired with the police, that Reller had introduced him to the pills in 2003 and he became dependent on them, that Reller knew he had a substance problem as he did, that both of them had enabled one another at some point, and that he was set up and Reller wanted him in jail instead of with his son. Curry reported having two dependents, a six-year-old who lives with his mother and for whom he had been paying $50 per week in child support prior to his incarceration, and a two-year-old who lives with his mother in Curry's house. He reported previous employment as a bartender, a laborer, and a parts engineer. He stated that he began using alcohol at age twenty and drank about once a week, preferring wine or scotch, that marijuana is his drug of choice and that he first used it at age eleven and progressed to daily usage from ages fifteen to twenty-one, that he first used opiates in 2004 given to him by Reller, and that Reller gave him the drug over one hundred times and he never paid for it. He further reported having completed three months of intensive outpatient counseling in 2003 and outpatient services in 2005 and 2010. His overall risk assessment score placed him in the low risk to reoffend category,

scoring in the moderate range in the categories of criminal history, education, employment, financial situation, neighborhood problems, and substance abuse, and in the low range in family and social support, peer associations, criminal attitudes and behavioral patterns. The probation officer's recommendation was a sentence of twenty years with a greater portion of the sentence served in a community corrections program.

[13] At sentencing, the court stated that, despite the risk assessment score in the PSI, it was convinced that Curry was a drug dealer, and noted that he had hundreds of pills and was clearly motivated by profit. The court also stated that, while Reller facilitated the offense, it did not think that he induced the offense or that there was strong provocation and that Curry had made a conscious decision to deal drugs whether it was to Reller or someone else. Curry's sentence on his class A felony conviction was six years below the advisory sentence, and his sentences on his other convictions were ordered to be served concurrently. Moreover, the court ordered that, after Curry has completed sixteen years of incarceration, he may petition the court for a modification to community corrections.

[14] After due consideration, we conclude that Curry has not sustained his burden of establishing that his aggregate sentence is inappropriate in light of the nature of the offenses and his character.

## *Conclusion*

[15] For the foregoing reasons, we affirm Curry's aggregate sentence for dealing in a schedule III controlled substance as a class A felony, dealing in a schedule II controlled substance as a class B felony, possession of marijuana as a class A misdemeanor, and driving while suspended as a class A misdemeanor.

[16] Affirmed.

Kirsch, J., and Mathias, J., concur.